IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ALBERTO CABRERA DE LA MATA**, *et al.*,

    Plaintiffs,

    v.

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**, *et al.*,

    Defendants.

Civil No. 10-1759 (BJM)

## OPINION AND ORDER

In an amended complaint, Alberto Cabrera de la Mata ("Cabrera"), his wife Maribel Rivera Pacheco ("Rivera"), and their conjugal partnership (collectively, "plaintiffs") sued the Puerto Rico Highway and Transportation Authority ("PRHTA"), Rubén Hernandez Gregorat ("Hernández") in his personal and official capacities as Secretary of the Department of Transportation and Public Works, Brenda Gomila Santiago ("Gomila") in her personal and official capacities as Executive Director of Human Resources, Lillian Carrasco ("Carrasco") in her personal and official capacities as Special Aide to the Secretary, Ferdinand Cedeño ("Cedeño") in his personal and official capacities as Special Aide to the Secretary (collectively, "defendants"), and an unnamed insurance company. (Docket No. 24, hereinafter "Compl."). Put simply, Cabrera alleges that he was stripped of key duties because of his allegiance to the Popular Democratic Party ("PDP") following the installation of New Progressive Party ("NPP") leadership in the wake of the 2008 gubernatorial election. Cabrera alleges that this deprived him of his rights to free speech, free association, equal protection, and due process under the federal Constitution, in violation of 42 U.S.C. § 1983 ("Section 1983"), as well as rights under the Commonwealth constitution, Law No. 184 of August 3, 2004, 3 L.P.R.A. §§ 1461 *et seq.*, Law No. 100 of June 26, 1956, 29 L.P.R.A. §§ 146 *et seq.*, and Articles 1802 and 1803 of the Puerto

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 2 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**  Page 2
Civil No. 10-1759 (BJM) – Opinion and Order

Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142.  Rivera and the conjugal partnership allege that they suffered damages based on having to "witness the anxiety and anguish this situation has had" on Cabrera.

Before the court are motions to dismiss under Fed. R. Civ. P. 12(b)(6) brought by Carrasco (Docket No. 60) and Cedeño (Docket No. 61) (collectively, "the moving defendants") through their official-capacity counsel.  These motions mooted their initial motions to dismiss (Docket Nos. 12, 13), which were renewed following plaintiffs' amended complaint.  (Docket No. 32).  Carrasco and Cedeño's personal-capacity counsel joined the original motions to dismiss.  (Docket Nos. 56, 58).  Plaintiffs opposed the original motions to dismiss after amending the complaint, but have not opposed the present motions.  (Docket No. 40).  In evaluating the present motions, I have considered plaintiffs' opposition to the extent it remains applicable, and deem Carrasco and Cedeño to have joined the motion in their personal capacities.  For the reasons that follow, the motions to dismiss are **granted in part**.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss at the pleading stage, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim."  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court parses the allegations of the complaint in two steps.  First, "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action'" are identified and completely disregarded.  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009)) (alteration marks omitted).  The remaining "[n]on-conclusory factual allegations" are then "treated as true, even if seemingly incredible."  Id.  The overall standard is only satisfied if those facts "state a plausible, not a merely conceivable, case for relief"; however, a court must not "attempt to forecast a plaintiff's likelihood of success on the merits."  Id.

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 3 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**　　　　Page 3
Civil No. 10-1759 (BJM) – Opinion and Order

## FACTUAL ALLEGATIONS

The non-conclusory factual allegations of the complaint are summarized below.

*The Parties*

Plaintiff Cabrera is a Puerto Rico resident and U.S. citizen, who has held both career and trust positions in government since 1991. (Compl., ¶ 2). Cabrera is a "lifelong" PDP member, who attends party meetings, "is very active and vocal about his political adherence," and is a member of the PDP-aligned employee association called "Renacer 2012." (Id., ¶ 3). He held trust positions within the agency during the preceding PDP administration, including Director of Human Resources and Assistant Executive Director of Human Resources and Industrial Safety. (Id., ¶¶ 4, 16). Following the 2008 elections, he was reappointed Supervisor of Personnel Transactions, which is classified as a career position. (Id., ¶ 17). Based on these facts, the individual defendants were each aware of Cabrera's political affiliation. (Id.).

Defendant Hernández was appointed Secretary of Transportation by Governor Luis Fortuño on or about January 7, 2009. (Id., ¶¶ 6, 17). Hernández, in turn, appointed defendants Gomila, Carrasco, and Cedeño to their positions. (Id., ¶¶ 8, 10, 12). All individual defendants are NPP members. (Id., ¶¶ 7, 9, 11, 13).

*The* El Nuevo Día *Leak and Investigations of Cabrera*

On April 29, 2009, *El Nuevo Día* published the salaries of all Highway and Transportation Authority trust employees. (Id., ¶ 22). "Defendants," though Cabrera does not specify which, accused him of leaking the information. (Id.). The accusers lacked any evidence linking Cabrera to the leak, but targeted Cabrera because of his PDP affiliation. (Id.).

Cedeño instructed then-Executive Director of Human Resources Luís M. Sánchez Casanova ("Sánchez"), an NPP member, to investigate Cabrera in connection with the leak, based on the statements of two anonymous witnesses who claimed that Cabrera provided the

information. (Id., ¶¶ 23-24). Hérnandez also ordered the investigation. (Id., ¶ 26).

Beginning April 30, 2009, Cabrera was deprived of several duties, including the processing and effectuation of all personnel appointments. (Id., ¶¶ 18-19). The stated reason for this was the leak investigation, but no evidence connects Cabrera with the leak. (Id., ¶ 20). In the meantime, Gomila gave instructions that appointments should instead be processed by an unidentified NPP supporter in "another department in the Agency." (Id., ¶ 19). Cabrera thus has no regular functions, and only receives occasional assignments. (Id., ¶ 18).

On May 26, 2009, Sánchez was forced to resign because his report concluded that Cabrera did not participate in the leak. (Id., ¶¶ 25, 26). Hernández appointed Gomila as Executive Director of Human Resources following Sánchez's resignation; Hérnandez supervises Gomila, and she "responds only to his instructions." (Id., ¶ 27).

"Defendants," though Cabrera does not identify which, then appointed César Maldonado Vásquez ("Maldonado") to further investigate Cabrera. (Id., ¶ 28). At some point in the past, Cabrera had recommended that Maldonado—an NPP partisan—be terminated for insubordination; Maldonado appealed his termination and prevailed "because of a technicality." (Id., ¶ 29). Cabrera personally informed Maldonado of the decision to terminate him; as a result, Maldonado is biased against Cabrera. (Id.). As of November 29, 2010, this investigation had not yielded any results. (Id., ¶ 21).

*Access to the Human Resources Database*

During January and February 2010, on Gomila's orders, Cabrera was deprived of access to the Human Resources database. (Id., ¶ 33). Gomila requested reports from Cabrera that required such access; when Cabrera complained that he lacked access, she instructed him to compile the reports through his subordinates. (Id., ¶ 34). Gomila's decisions were motivated by Cabrera's PDP affiliation, "with the obvious intent to humiliate [Cabrera] before his

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 5 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**   Page 5
Civil No. 10-1759 (BJM) – Opinion and Order

subordinates." (Id.). Gomila also told Cabrera that access would only be granted on a "strict need basis"; however, Cabrera's functions "obviously" required database access, and his subordinates had unrestricted access. (Id., ¶ 35).

*Personnel Audit and Nullification of Cabrera's Appointment*

Following his appointment in 2009, Hernández ordered an audit of the appointments, transfers, and promotions conducted during the PDP administration, in order to discover those that could be nullified. (Id., ¶ 36). Cedeño also ordered the audit. (Id., ¶ 42). In an early 2010 meeting, Hernández stated that he was going to dismiss nearly 1,000 agency employees, that it was "a shame" they would come from both parties, but that he was sure PDP supporters would be more greatly affected. (Id., ¶ 38). Thus, Hernández chose this timeframe intending to disproportionately affect PDP members. (Id., ¶ 37).

In September 2009, a paid external auditor, Azalia Cruz ("Cruz"), met with agency supervisors, including Cabrera, to explain her task: to uncover ways to nullify as many appointments from the PDP administration as possible, placing the burden on affected employees to defend themselves. (Id., ¶ 40). Cabrera asked "defendants," though he does not indicate which, to cancel Cruz's assignment on grounds of bias; his request was ignored. (Id., ¶ 41).

On January 26, 2010, Hernández sent Cabrera a letter informing him that his career appointment as Supervisor of Personnel Transactions was going to be declared null. (Id., ¶ 42). As of November 29, 2010, Cabrera's administrative challenge of this determination remained pending. (Id., ¶ 43). Sometime following the nullification letter, Cabrera sought access to his personnel file. (Id., ¶ 45). Same-day access to one's own personnel file was both customary and required by past agency regulations; however, along with other employees asking to review their files, Cabrera was denied immediate access. (Id.). Instead, pursuant to a new procedure, Cabrera was required to examine his file in Carrasco's office, and there was a one-week delay

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 6 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**          Page 6
Civil No. 10-1759 (BJM) – Opinion and Order

before Cabrera could access his file.  (Id., ¶ 46).

*Cabrera's Cubicle and Other Ongoing Effects*

Gomila moved Cabrera and other supervisors to a cubicle that failed to meet an unspecified OSHA requirement, for which the agency was fined.  (Id., ¶ 48).  Cabrera was moved to a compliant cubicle, but certain unidentified "lower ranking, non[-]supervisory" NPP supporters were given offices.  (Id.).

As of November 29, 2010, Cabrera had not been reinstated to his former duties.  (Id., ¶¶ 18, 21).  Rivera "has had to witness the anxiety and anguish this situation has had on her spouse." (Id., ¶ 51).  This impacts "her and their marriage." (Id.).

## DISCUSSION

The amended complaint invokes the First Amendment, the due process clause, and the equal protection clause as grounds for every defendant's liability under section 1983.  The moving defendants argue that Rivera and the conjugal partnership lack standing to sue under section 1983, that the allegations of Carrasco and Cedeño's knowledge of Cabrera's political affiliation and involvement in any discrimination are insufficient, that the *Mount Healthy* defense entitles them to dismissal of the political discrimination claims, and that plaintiffs fail to state equal protection or due process violations.  They also argue that the court should decline supplemental jurisdiction upon dismissing all claims.

### I.     Rivera's Standing to Sue

The moving defendants argue that Rivera lacks standing to sue under section 1983 because she was not personally injured by any state action.  Standing is a jurisdictional principle based on both "constitutional requirements and prudential concerns," requiring courts to ask "whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts." Pagán v. Calderón, 448 F.3d 16, 26-27 (1st Cir. 2006).  Under the law of

this circuit, section 1983 does not provide a cause of action for family members' damages "unless the unconstitutional conduct was aimed at the familial relationship." See Robles-Vasquez v. Tirado García, 110 F.3d 204, 206 n. 4 (1st Cir. 1997) (wrongful death); Ramírez-Lluveras v. Pagán-Cruz, --- F. Supp. 2d. ---, Civil No. 08-1486 (FAB), 2011 WL 4552536, at *4 (D.P.R. Oct. 3, 2011) (collecting cases).

The complaint seeks damages for Rivera and the conjugal partnership "because of [defendants'] intentional tortious misconduct and repeated violation *of plaintiff Cabrera de la Mata's constitutional rights*." (Compl, ¶ 60) (emphasis added). To the extent this was intended as a section 1983 claim, defendants are entitled to its dismissal. However, this analysis has no impact on claims under Commonwealth law, so long as they share a common nucleus of fact with any of Cabrera's remaining federal claims. See Rodríguez-Rios v. Cordero, 138 F.3d 22, 26-27 (1st Cir. 1998). I return to the question of supplemental jurisdiction over Commonwealth claims in the final section of this opinion.

## II. Equal Protection

As the moving defendants observe, "[a]n equal protection claim alleging political discrimination merely restates a First Amendment political discrimination claim and, as we have said repeatedly, should [be] considered under the First Amendment." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 n. 8 (1st Cir. 2010) (collecting cases). Although the complaint refers to Cabrera's rights "under the First Amendment . . . and Equal Protection clauses," (Docket No. 24, p. 15), the complaint does not clearly distinguish these claims. Moreover, plaintiffs' opposition only refers to First Amendment and due process claims. (See Docket No. 40, p. 10-11). The defendants are therefore entitled to dismissal of the equal protection claims.

## III. Due Process

The moving defendants also attack Cabrera's due process claims, arguing that he failed to

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 8 of 13

| Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority | Page 8 |
|---|---|
| Civil No. 10-1759 (BJM) – Opinion and Order | |

allege the deprivation of any protected right. The right to due process consists of both substantive and procedural guarantees. Pagán, 448 F.3d at 32. To state a procedural due process claim, the plaintiffs "must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [them] of that interest without constitutionally adequate process." González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006)). Similarly, substantive due process is violated where (1) a defendant's acts are "so egregious as to shock the conscience," and (2) the acts deprived the plaintiff of a protected life, liberty, or property interest. Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011). Local law defines property interests, and "[o]n this point, Puerto Rico law is pellucid: a public employee may have a property interest in his continued employment . . . but not in the particular functions of his job." Rojas-Velásquez v. Figueroa-Sancha, --- F.3d ---, No. 11-1447, slip op. at 12 (1st Cir. March 29, 2012) (citations omitted).

Plaintiffs appear to disclaim any theory of a due process violation based on Cabrera's potential termination, as they point to the rule that an employee has no expectation of continued employment when his appointment is "null and void *ab initio*." (Docket No. 40, p. 11) (quoting Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988)). And "[a] claim of constructive discharge due to a demotion or transfer cannot succeed when a claimant, in fact, has not left employment." Pedro-Cos v. Contreras, 976 F.2d 83, 85 (1st Cir. 1992). Plaintiffs only conclude that Cabrera was denied due process by the "attempt to his career appointment [*sic*] as [defendants'] goal is to build a record to terminate him or force a resignation." (Docket No. 40, p. 11). In sum, Cabrera "does not claim to have been deprived of state employment, [his] title, or [his] salary; [he] claims only to have been deprived of duties pertaining to [his] position." See Torres-Martínez v. P.R. Dep't of Corrections, 485 F.3d 19, 24 (1st Cir. 2007). The defendants

Case 3:10-cv-01759-BJM Document 100 Filed 03/30/12 Page 9 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**     Page 9
Civil No. 10-1759 (BJM) – Opinion and Order

are thus entitled to dismissal of the federal due process claims.

### IV. Political Discrimination

Carrasco and Cedeño argue that Cabrera's allegations do not establish their personal involvement in the political discrimination against him. Generally, "non-policymaking public employees are protected by the First Amendment against adverse employment actions taken in response to their political activities and affiliations." Rojas-Velásquez, --- F.3d at ---, slip op. at 7. Such a plaintiff must allege "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Ocasio-Hernández, 640 F.3d at 13 (quoting Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010)).

A particular defendant's position within an agency, standing alone, is insufficient to hold him or her liable under section 1983. Ayala-Rodríguez v. Rullan, 511 F.3d 232, 236 (1st Cir. 2007). Rather, a plaintiff must "establish that her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010). Logically, to condone or authorize conduct, the official must at least have actual or constructive notice of the violation. Id. But more than mere notice is required, since "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 536 (1st Cir. 2011) (quoting Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993)). Importantly, this substantive requirement is not relaxed merely because the case is at the pleading stage; "*each* defendant's role in the [challenged] decision must be sufficiently alleged to make him or her a plausible defendant." Ocasio-Hernández, 640 F.3d at 16 (emphasis in original).

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 10 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**          Page 10
Civil No. 10-1759 (BJM) – Opinion and Order

### A.      Carrasco's Participation in Adverse Actions

Carrasco surmises that the only factual allegation against her is that Cabrera had to report to her office in order to review his personnel file. (Docket No. 60, p. 2-3; Compl, ¶ 45). Plaintiffs retort that "since the [NPP] administration started . . . [d]efendant Carrasco improperly limited [Cabrera's] access to his personnel files in an attempt to chill any attempt to claim his employment rights as part of the harassment pattern [Cabrera] was subjected to by all [d]efendants including defendant[s] Carrasco and Cedeño." (Docket No. 40, p. 7-8). But reviewing the complaint, I find no allegation that Carrasco was responsible for either the change in policy regarding the review of individual personnel files, or for the one-week delay in providing Cabrera with access. Plaintiffs' scattered references to conduct "determined and carried out by all of the [d]efendants, in one way or another," (e.g., Docket No. 40, p. 7), are also insufficient. The complaint's references to "defendants" are not enough to bring an overall theory of Carrasco's involvement into the realm of plausibility. "Specific information, even if not in the form of admissible evidence, would likely be enough at this stage; pure speculation is not." Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 596 (1st Cir. 2011).

Plaintiffs' parting reference to their entitlement to conduct discovery does not withstand scrutiny. First, maintaining the action against Carrasco would not be the proper course of action to keep discovery open. See Peñalbert-Rosa, 631 F.3d at 596-97 (affirming dismissal against named defendants but remanding with leave to add "John Doe" defendant and continue discovery). Moreover, discovery is over and the defendants have moved for summary judgment; yet plaintiffs have not sought to further amend the complaint, despite the passage of nearly a year and a half since Carrasco first argued that the allegations against her were insufficient. (See Docket No. 12) (filed October 18, 2010). Carrasco is therefore entitled to dismissal of the section 1983 claims against her.

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 11 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**   Page 11
Civil No. 10-1759 (BJM) – Opinion and Order

### B.   Cedeño's Knowledge and Participation

Cedeño bases his motion on the same legal principle as Carrasco's, but it does not hold true in his case. Cabrera specifically alleges that Cedeño ordered the initial investigation into the *El Nuevo Día* leak and ordered the audit of appointments made during the PDP administration. (Compl., ¶¶ 24, 42). Cedeño argues that he "did not have the authority to request or order an investigation or audit." (Docket No. 61, p. 3). But in the motion to dismiss analysis, I must credit plaintiffs' non-conclusory factual allegations; thus, regardless of whether Cedeño actually had such authority, I assume that he caused both the investigation and audit to be carried out. And in contrast with the anemic allegations regarding Carrasco, plaintiffs' overall claim much more plausibly connects Cedeño to the events Cabrera complains of. For instance, while Cabrera does not pinpoint which individual appointed Maldonado to investigate him a second time, it is plausible that Cedeño (who ordered the initial investigation) was linked to this decision as well.

Cedeño also argues that the allegations regarding his knowledge of Cabrera's political affiliation are insufficient. (Docket No. 61, p. 14). But I find that the specific factual allegations Cabrera makes, when evaluated for their "cumulative effect," support a reasonable inference of knowledge that suffices at this stage. See Ocasio-Hernández, 640 F.3d at 13-16 (analyzing political discrimination claim's knowledge element at pleading stage). First, Cabrera was no mere mainline employee who happened to be hired during a PDP administration; rather, he held top-level trust positions in the same department immediately preceding the change of power. (Compl., ¶¶ 4, 16-17). Cabrera also alleged that he was "vocal about his political adherence," and attends PDP-oriented meetings with other PRHTA employees. (Id., ¶ 3). In sum, I find it plausible that the "special aide" to an agency head could have known about Cabrera's past and present PDP affiliation. (See id., ¶ 12).

To the extent that his participation in these events is otherwise actionable, the allegations

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 12 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**       Page 12
Civil No. 10-1759 (BJM) – Opinion and Order

in the amended complaint are sufficient to state plausible political discrimination claims against Cedeño. He is therefore not entitled to dismissal on this ground.

### C. The *Mount Healthy* Affirmative Defense

Finally, both moving defendants generally invoke the *Mount Healthy* defense and assert that Cabrera would have been stripped of duties regardless of his political affinity. (Docket No. 60, p. 12, 14-15; Docket No. 61, p. 13, 15-16). Reduced to blackletter, *Mount Healthy* stands for the proposition "that where there was a permissible and impermissible ground for a firing, the impermissible ground should be ignored where the employee would have been discharged anyway based on the permissible motive." Tejada-Batista v. Morales, 424 F.3d 97, 101 (1st Cir. 2005) (quoting Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977)).

Taking Cabrera's allegations as true, he would *not* have been stripped of his duties in the absence of political animus. He alleges that he was only initially accused of the *El Nuevo Día* leak because of his PDP membership, and that the investigation was only prolonged because he was exonerated by the initial report. (Compl, ¶¶ 20-22, 25-29). At the motion to dismiss stage, defendants' factual assertions to the contrary are entitled to no weight whatsoever.

In sum, Cedeño has not shown that the complaint fails to state political discrimination claims against him. He is therefore not entitled to their dismissal.

### V. Supplemental Jurisdiction

The moving defendants' only discussion of the Commonwealth causes of action asks the court to decline supplemental jurisdiction. But when a district court has original jurisdiction over a civil claim, supplemental jurisdiction extends to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," *including* "claims that involve

Case 3:10-cv-01759-BJM   Document 100   Filed 03/30/12   Page 13 of 13

**Cabrera de la Mata v. Puerto Rico Highway and Transportation Authority**  Page 13
Civil No. 10-1759 (BJM) – Opinion and Order

the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Since the related claims conferring original jurisdiction remain viable, I do not have occasion to decline jurisdiction on that ground. See 28 U.S.C. § 1367(c). The defendants have failed to show any other reason to dismiss the Commonwealth claims; therefore, their request is denied.

## CONCLUSION

For the foregoing reasons, Carrasco and Cedeño's motions to dismiss are **GRANTED IN PART.** Specifically, (1) the section 1983 claims brought by Rivera and the conjugal partnership, (2) the section 1983 claims against Carrasco, and (3) the equal protection and due process claims against Cedeño are **DISMISSED WITH PREJUDICE.** The motions to dismiss the First Amendment claims against Cedeño and the Commonwealth claims against both defendants under Rule 12(b)(6) are **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March, 2012.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge